UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

IN RE:

Deborah Ann Bacchus
*dba* My Dream Home Realty Inc.,

DEBTOR.

-----------------------------------------------------X

Hearing Date: January 23, 2018

Hearing Time: 10:00 AM

CASE NO.: 17-71193-las

Chapter: 7

JUDGE: LOUIS A. SCARCELLA

## NOTICE OF MOTION FOR ORDER
## GRANTING RELIEF FROM AUTOMATIC STAY

SIRS:

**PLEASE TAKE NOTICE** that Federal National Mortgage Association ("Fannie Mae") ("Movant") seeks relief from the automatic stay as to the property located at 34 Maxson Ave., Freeport, NY 11520, (the "Premises") and will move before the Honorable Louis A. Scarcella, United States Bankruptcy Judge in the United States Bankruptcy Court for the Eastern District of New York located at Long Island Federal Courthouse, 290 Federal Plaza, Courtroom 970, Central Islip, NY 11722, on January 23, 2018 at 10:00 AM, or as soon thereafter as counsel may be heard, for an Order:

    1. Pursuant to Bankruptcy Rule 4001, 11 U.S.C. Section 362(d)(1) and 11 U.S.C. Section 362(d)(2) granting Movant, its successors and/or assigns, relief from the Automatic Stay; and

    2. Granting Movant such other and further relief as is just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief herein requested shall be in writing, shall state with particularity the grounds for the objection, shall be filed with the Clerk of the Bankruptcy Court and served upon, the undersigned counsel for the Movant seven (7) days prior to the return date of the within Motion.

Dated: December 14, 2017
      Plainview, New York

Respectfully submitted,

ROSICKI, ROSICKI & ASSOCIATES, P.C.
By: Stephani A. Schendlinger, Esq.
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

To:
Deborah Ann Bacchus, dba My Dream Home Realty Inc.
Debtor Pro Se
34 Maxson Ave
Freeport, NY 11520

Marc A. Pergament, Esq.
Trustee
Weinberg Gross & Pergament
400 Garden City Plaza
Suite 403
Garden City, NY 11530

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE:                                           CASE NO.: 17-71193-las

Deborah Ann Bacchus                              Chapter: 7
*dba* My Dream Home Realty Inc.,

                              DEBTOR.            JUDGE: LOUIS A. SCARCELLA

--------------------------------------------------------X

## [PROPOSED] ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon the Application, dated December 14, 2017 (the "Application"), of Federal National

Mortgage Association ("Fannie Mae") (the "Movant"), by its attorneys, Rosicki, Rosicki &

Associates, P.C., seeking an Order: (i) modifying and terminating the automatic stay to permit

the Movant to exercise all of its rights and remedies with respect to certain collateral consisting

of the real property known as 34 Maxson Ave., Freeport, NY 11520, (the "Premises"); and (ii)

granting Movant such other and further relief as the Court deems just and proper; and

The Application having come before this Court to be heard on January 23, 2018; and no

opposition to the relief requested having been heard; and in consideration of the foregoing, and

upon the affidavit of service filed with the Court, the record made at the hearing on the

Application and the decision reached at the conclusion thereof; and after due deliberation, the

relief requested appearing reasonable, proper and warranted in fact and by law under Section

362(d)(1) and Section 362(d)(2) of the Code to permit Movant to exercise all of its rights and

remedies under applicable law with respect to the Premises, it is hereby

**ORDERED** that the Application of Movant is granted modifying the automatic stay to

allow Movant, its successors and/or assigns, to pursue any and all action and to exercise its

remedies as to the property known as 34 Maxson Ave., Freeport, NY 11520; and it is further

**ORDERED**, that the Trustee shall retain any and all interest the Debtors' estate may

have in any surplus monies from a foreclosure sale of the Real Property.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

Deborah Ann Bacchus *dba* My Dream Home Realty Inc.

Debtor.

## ORDER GRANTING RELIEF FROM
## THE AUTOMATIC STAY

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE:                                    CASE NO.: 17-71193-las

Deborah Ann Bacchus                       Chapter: 7
*dba* My Dream Home Realty Inc.,

        DEBTOR.    JUDGE: LOUIS A. SCARCELLA


--------------------------------------------------------X

### APPLICATION IN SUPPORT OF AN ORDER
### MODIFYING AND TERMINATING THE AUTOMATIC STAY

**TO:  THE HONORABLE LOUIS A. SCARCELLA**
  **UNITED STATES BANKRUPTCY JUDGE:**

   The Application of Federal National Mortgage Association ("Fannie Mae") ("Movant"),

by its attorneys, Rosicki, Rosicki & Associates, P.C., respectfully represents and says:

   Stephani A. Schendlinger, Esq., an attorney at law duly admitted to practice before this

Court and the Courts of the State of New York, hereby affirms the following to be true under

penalty of perjury:

**I.  RELIEF REQUESTED**

   1. This is a contested matter brought pursuant to Federal Rules of Bankruptcy Procedure

Rules 4001, 9013 and 9014 and Sections 361, 362(d) of Title 11 of the United States Code (the

"Bankruptcy Code"), for an Order: (i) granting Movant, its successors and/or assigns, relief from

the automatic stay due to the failure of Deborah Ann Bacchus, *dba* My Dream Home Realty Inc.,

(the "Debtor") to make payments, and/or offer and provide Movant with adequate protection for

its security interest in the property located at 34 Maxson Ave., Freeport, NY 11520 (the

"Premises"); and (ii) granting Movant such other and further relief as is just and proper.

**II.  BACKGROUND**

   2.  Movant is the owner of a Note and Mortgage, dated March 14, 2001, given by

Deborah Bacchus (the "Debtor") in the original principal amount of $175,000.00 pledging the

Premises as security. Copies of the Note, endorsed in blank, Mortgage and Assignments are annexed hereto as Exhibit "A".

    3. As the loan became delinquent, Movant commenced a foreclosure action in the Supreme Court of the State of New York, County of Nassau, on or about July 11, 2007. On November 9, 2016, a Judgment of Foreclosure and Sale (the "JFS") was entered in favor of Movant. A copy of the JFS is attached hereto as Exhibit "B".

    4. Pursuant to the terms of the JFS, a foreclosure sale was scheduled for March 7, 2017; however, on March 2, 2017, the Debtor filed with the Clerk of this Court a petition for relief under Chapter 7 of the Bankruptcy Code. Therefore, the sale was canceled.

## III. THE APPLICATION

    5. Based upon information provided by Movant, the Debtor is in contractual default under the terms of the Note and Mortgage for failure to make timely payments in the amount of $2,133.82 per month from April 1, 2017 through February 1, 2015, $2,989.97 per month from March 1, 2015 through January 1, 2017 and $3,259.55 per month from February 1, 2017 through November 1, 2017, and the loan is contractually due for April 1, 2007. As required by E.D.N.Y Administrative Order #533, the completed motion for relief Worksheet (the "Worksheet") is annexed hereto as Exhibit "C" executed by Catherine Rogers and dated December 12, 2017.

    6. That by failing to make mortgage payments, the Debtor has failed to provide Movant with adequate protection for its security, entitling Movant, its successors and/or assigns, to relief from the automatic stay. As a result, relief from stay is warranted pursuant to Section 362(d)(1).

    7. Additionally, there is insufficient equity in the Premises.

    8. Movant's total lien on the Premises as of November 27, 2017 is approximately $466,522.83.

9.   According to the Debtor, the Premises has an estimated value of $250,000.00.  A copy of the Debtor's Schedule A/B is annexed hereto as Exhibit "D".

10.   Based upon the above, insufficient equity exists in this Premises and it is not necessary for the Premises to be maintained by the estate.  Consequently, Movant is entitled to relief from the automatic stay so that it may proceed with the enforcement of its security interest in the Premises.

11.   For the reasons stated above, the Debtor has failed to adequately protect the interest of Movant, causing Movant irreparable harm and injury.

12.   Additionally, by seeking relief under Chapter 7, Debtor is not seeking to reorganize and thus, the Premises is not necessary for a successful reorganization.  Therefore, relief from stay is warranted pursuant to Section 362(d)(2).

## IV.   **CONCLUSION**

13.   Relief from the stay is warranted under Section 362(d).  Accordingly, the automatic stay must be modified to permit Movant to assert its rights in the Premises, including, but not limited to, the consummation of a foreclosure sale and eviction proceedings with respect to the Premises.

**WHEREFORE**, Movant respectfully requests that an Order be granted modifying the automatic stay as to it, its successors and/or assigns, permitting maintenance of a mortgage foreclosure action and eviction proceeding with respect to the Premises; and for such other and further relief as the Court may deem just and proper.

Dated: December 14, 2017
      Plainview, New York

Respectfully submitted,

ROSICKI, ROSICKI & ASSOCIATES, P.C.
By: Stephani A. Schendlinger, Esq.
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

      Deborah Ann Bacchus *dba* My Dream Home Realty Inc.,
                  Debtor**.**

**NOTICE OF MOTION AND APPLICATION
IN SUPPORT OF ENTRY OF AN ORDER VACATING STAY**

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

**EXHIBIT A**

# NOTE



MARCH 14, 2001
[Date]

**RICHMOND HILL**
[City]

NEW YORK
[State]

34 MAXSON AVE, FREEPORT, NY 11520
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    **$175,000.00**    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    HOMESIDE LENDING, INC.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.875%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the    **1ST**    day of each month beginning on    **MAY 1, 2001.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    **APRIL 1, 2031,**    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. BOX 7198
PASADENA, CA 91109-7198

or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.    **$1,149.63.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of    **15**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **2.000%**    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.



**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DEBORAH BACCHUS

AS WITNESS ONLY

PAY TO THE ORDER OF

WITHOUT RECOURSE
HOMESIDE LENDING, INC.

_____
BRENDA F. BRENDLE
SENIOR VICE PRESIDENT

[Sign Original Only]





NASSAU COUNTY CLERKS OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 05-17-2001
Recorded Time: 1:09:52 PM

Liber Book: M  20995
Pages From:      788
       To:       798

Control
Number: 1336
Ref #: CS  008021
Doc Type: M01  Mortgage

Record and Return To:
HOMESIDE LENDING INC
CUSTODIAL LIAISON MAIL BBCL3
1749 BAYBERRY RD 1ST FLOOR
JACKSONVILLE, FL  32256

Location:                    Section  Block      Lot    Unit
HEMPSTEAD (2820)             0054     00054-00   00271

Consideration Amount:        175,000.00

GJS001

|              | Taxes Total     | 1,725.00 |
|              | Recording Totals | 53.00   |
|              | Total Payment   | 1,778.00 |

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK





When recorded mail to:
HOMESIDE LENDING, INC.
7749 BAYBERRY RD., 1ST FLOOR
JACKSONVILLE, FL  32256
ATTN CUSTODIAL LIASON, MAILSTOP BBCL3

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated   MARCH 14, 2001,              together with all Riders to
this document, will be called the "Security Instrument."
(B) "Borrower."  DEBORAH BACCHUS,

whose address is   34 MAXSON AVE, FREEPORT, NY 11520,

**Premises Improved by a one
or two Family Dwelling**

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."   HOMESIDE LENDING, INC.

will be called "Lender."

Lender is a corporation or association which exists under the laws of FLORIDA ,
Lender's address is 7301 BAYMEADOWS WAY, JACKSONVILLE,FL 32256.

54
──
54
──
27)

(D) "Note." The note signed by Borrower and dated MARCH 14, 2001,              will be called the "Note." The Note
shows that I owe Lender  ***********************ONE HUNDRED SEVENTI FIVE THOUSAND AND NO/100
*************************************************** Dollars (U.S.   $175,000.00  )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in
full by APRIL 1, 2031.
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the
"Property."
(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property"
sometimes will be called the "Sums Secured."
(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following
Riders are to be signed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules
and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions will be called "Applicable
Law."
(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on
Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community
Association Dues, Fees, and Assessments."
(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, either than by check, draft, or similar
paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer
are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.            Initials  DB

NEW YORK--Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                     Page 1 of 9

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds is defined in, and paid under, the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at **34 HAXSON AVE, FREEPORT,**

[(Street), (Name of Town/City)]

New York    11520.    County. It has the following legal description:
[Zip Code]

This Property is in NASSAU
SEE ATTACHMENT A.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (A) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) though (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Initials: _____

## SCHEDULE A
## LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Freeport, Town of Hempstead, County of Nassau and State of New York, known as and by the westerly 75 feet of Lots 109 to 112 both inclusive on a certain map entitled, "Map No. 1 of Residence Park, at Freeport, L.I. owned and controlled by the Warranty Realty Company", and filed in the Office of the Clerk of the County of Nassau on 06/09/1903 as Map No. 234, Case #1813, and which said parts of Lots when taken together are bounded and described as follows:

BEGINNING at a point on the northerly side of Maxson Avenue (Central Avenue) distant 75 feet westerly from the corner formed by the intersection of the northerly side of Maxson Avenue (Central Avenue) with the westerly side of Connecticut Avenue;

RUNNING THENCE South 89 degrees 45 minutes West, along the northerly side of Maxson Avenue (Central Avenue), 75 feet;

THENCE North 00 degrees 15 minutes West, 100 feet;

THENCE North 89 degrees 45 minutes East, 75 feet;

THENCE South 00 degrees 15 minutes East, 100 feet to the northerly side of Maxson Avenue (Central Avenue), the point or place of BEGINNING.

SAID PREMISES also being known as        34 Maxson Avenue
                                         Freeport, New York

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check, or other payment instrument received by Lender as payment under the Note, or at another location designated by Lender under the Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I owe to make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payment. If interest on principal accrues on all the paid payments and been paid in credit, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I may have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.  **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amount due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any Late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a Late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is owed, Lender may apply any payment received from me. First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full. Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary pre-payments will be applied as follows: First, to any prepayment charges, and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of these payments.

3.  **Monthly Payments For Taxes And Insurance.**

(a)  Borrower's Obligations. I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied towards payment of the following items which are called "Escrow Items":

(1)  The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made, against property because of an obligation has not been fulfilled is known as a "Lien";

(2)  The leasehold payments or ground rents on the Property (if any);

(3)  The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)  The premium for Mortgage Insurance (if any);

(5)  The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6)  If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender these Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any amount that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by making calculating assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items and in future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a Lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under

Initials: _____

RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these Services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when they are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.   Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under an lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If one is an Escrow Item, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all claims against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and I agree with the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in the Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends, or (c) I secure from the holder of the other Lien an agreement, Approved by Lender, that the Lien of this Security Instrument is superior to the Lien held by that person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of these actions listed in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.   Borrower's Obligation To Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all of the buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last preceding Sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification, and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request that the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become an additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of these policies will include in what is known as a "Standard Mortgage Clause" to protect Lender and will show Lender's name as mortgagee and/or as an additional loss payee. The terms of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or restore the damaged Property only if the restoration or repair is economically feasible to make the repairs or restoration, (b) the repair of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument, or (c) I order not being paid. Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument, whether or not then due, with the excess, if any, paid to me. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate

Initials  _____

and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Borrower's Obligation to Occupy the Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.    Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.
(a) Maintenance and Protection of the Property. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair in order to prevent it from deteriorating or decreasing in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.
(b)   Lender's Inspection of Property. Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If there is a reasonable purpose, Lender may inspect the inside of the home or of the improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.    Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include, a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9.    Lender's Right to Protect its Rights In The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note from the date of disbursement and will begin to be due that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10.   Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve payments. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance, and (d) the Mortgage Insurance coverage is in the amount and for the period that Lender required is provided by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in this Section 10, until this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

Initials: ____

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all such Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be completed promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the case of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award or settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or a party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me such a Person for not fulfilling obligations under the Secured under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, (2) Lender accepts payments from third Persons, Persons, or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note (a "Co-signer"): that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms

Initials: _____

of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge this fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me another notice address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by Federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that I and Lender cannot agree by contract. If any terms of this Security Instrument or the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights if the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right to have enforcement of this Security Instrument stopped if I meet the following conditions: (a) I pay Lender the sum which then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required; (b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; (c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law

Initials ___

requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which payments should be made. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join, or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

24. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 24. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 24 are called "Hazardous Substances." An "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance onto the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Cleanup.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights if Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:
(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or, if another default occurs under this Security Instrument.
(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and
(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has received all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to

Initials _____

receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other Improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25.** Borrower's Statement Regarding the Property [check box as applicable].

[ ] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 9 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses.

_____(Seal)

DEBORAH BACCHUS

## LEGIBILITY POOR
## FOR MICROFILM

State of NEW YORK        )
                         ) ss:
County of ___Queens___   )

On the __14th__ day of __March__ in the year __2001__ before me, the undersigned, a Notary Public in and for said State, personally appeared _____

___Deborah Bacchus___

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

Notary Public

My commission expires:

TARA A. PUTERBAUGH
Notary Public, State of New York
No. 01PU5057094
Qualified in Westchester County
Commission Expires March 18, 2002



NASSAU COUNTY CLERK'S OFFICE

ENDORSEMENT COVER PAGE

Recorded Date: 08-24-2015
Recorded Time: 11:10:22 a

Liber Book: M 40662
Pages From:    985
       To:     987

      Control
      Number:   693
      Ref #:
Doc Type: M23   ASSIGN MORTGAGE

Refers to: Book: M  20995 Page: 788

Location:                Section Block    Lot    Unit
HEMPSTEAD (2820)         0054   00054-00  00271

                         Taxes Total          .00
                     Recording Totals      205.00
                        Total Payment      205.00
CHK001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED.
MAUREEN O'CONNELL
County Clerk

After recording please mail to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

DISTRICT: HEMPSTEAD (2820), SECTION: 0054, BLOCK: 00054-00, LOT: 00271

———————————————[Space Above This Line For Recording Data]———

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, THE FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION ORGANIZED AND EXISTING UNDER AN ACT OF CONGRESS (FDIC), WHOSE ADDRESS IS 1601 BRYAN STREET, DALLAS, TX 75201, AND ACTING IN ITS RECEIVERSHIP CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, SUCCESSOR IN INTEREST TO HOMESIDE LENDING, INC., the undersigned holder of a Mortgage (herein "Assignor"), whose address is 1601 BRYAN STREET, DALLAS, TX 75201 does hereby grant, sell, assign, transfer and convey, unto JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, (herein "Assignee"), whose address is 700 KANSAS LANE, MC 8000, MONROE, LA 71203, all beneficial interest under a certain Mortgage dated March 14, 2001 and recorded on May 17, 2001, made and executed by DEBORAH BACCHUS, to and in favor of HOMESIDE LENDING, INC., upon the following described property situated in NASSAU County, State of New York:
Property Address: 34 MAXSON AVE, FREEPORT, NY 11520

such Mortgage having been given to secure payment of  One Hundred Seventy Five Thousand  and 00/100ths ($175,000.00), which Mortgage is of record in Book, Volume or Liber No. M 20995, at Page 788-798 (or as No. N/A), in the Office of the County Clerk or Register of NASSAU County, State of New York.

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. §1821(d)(2)(G)(i)(II).

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

New York Assignment of Mortgage
JPMorgan Chase Bank N.A. Proje███           Page 1 of 2                          Rev. 02/14

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
12-12-2014.

Assignor:
JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, AS ATTORNEY IN FACT FOR THE
FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER OF WASHINGTON MUTUAL
BANK, F/K/A WASHINGTON MUTUAL BANK, FA,
SUCCESSOR IN INTEREST TO HOMESIDE
LENDING, INC.

By: _____

                    Raul Johnson

Its:    **VICE PRESIDENT** _____

## ACKNOWLEDGMENT

State of Louisiana              §
                                §
Parish of Ouachita              §

On the 12th day of Dec_____ in the year 2014 before me, the undersigned, personally
appeared _____Raul Johnson_____, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed
the instrument.

Signature of Individual Taking Acknowledgment: _____

                    Melanie K. Shrell

Printed Name    **NOTARY PUBLIC** _____

Office of Individual Taking Acknowledgment _____

(Seal)          My Commission Expires:        **At Death**

MAUREEN O'CONNELL COUNTY CLERK
NASSAU COUNTY CLERK'S OFFICE
E-RECORDED

Bk M40662 Pg988 #694
08-24-2015 @ 11:10a



NASSAU COUNTY CLERK'S OFFICE

ENDORSEMENT COVER PAGE

Recorded Date: 08-24-2015
Recorded Time: 11:10:22 a

Liber Book: M 40662
Pages From:      988
       To:      990

Control
Number:     694
Ref #:
Doc Type: M23  ASSIGN MORTGAGE

Refers to: Book: M  20995 Page: 788

Location:                 Section  Block    Lot    Unit
HEMPSTEAD (2820)          0054     00054-00 00271

Taxes Total              .00
Recording Totals      205.00
CHK001                          Total Payment         205.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED.
MAUREEN O'CONNELL
County Clerk

.

After recording please mail to:
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

**DISTRICT: HEMPSTEAD (2820), SECTION: 0054, BLOCK: 00054-00, LOT: 00271**

—————————————*[Space Above This Line For Recording Data]*—————

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Mortgage (herein "Assignor"), whose address is **700 KANSAS LANE, MC 8000, MONROE, LA 71203** does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is **14221 Dallas Parkway, Suite 100, Dallas, TX 75254**, all beneficial interest under a certain Mortgage dated March 14, 2001 and recorded on May 17, 2001, made and executed by **DEBORAH BACCHUS**, to and in favor of **HOMESIDE LENDING, INC.**, upon the following described property situated in NASSAU County, State of New York:
Property Address: 34 MAXSON AVE, FREEPORT, NY 11520

such Mortgage having been given to secure payment of **One Hundred Seventy Five Thousand and 00/100ths** ($175,000.00), which Mortgage is of record in Book, Volume or Liber No. M 20995, at Page 788-798 (or as No. N/A), in the Office of the County Clerk or Register of NASSAU County, State of New York. -

**CHAIN OF TITLE**

**THE FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION ORGANIZED AND EXISTING UNDER AN ACT OF CONGRESS (FDIC), WHOSE ADDRESS IS 1601 BRYAN STREET, DALLAS, TX 75201, AND ACTING IN ITS RECEIVERSHIP CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, SUCCESSOR IN INTEREST TO HOMESIDE LENDING, INC TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, TO BE RECORDED CONCURRENTLY IN NASSAU COUNTY.**

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

| New York Assignment of Mortgage JPMorgan Chase Bank N.A. Project | Page 1 of 2 | Rev. 02/14 |
|---|---|---|

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
*12·12·2014* .

Assignor:
**JPMorgan Chase Bank, National Association**

By: _____

Raul Johnson

Its: _____

**VICE PRESIDENT**

### ACKNOWLEDGMENT

State of **Louisiana**                    §
                                          §
Parish of **Ouachita**                    §

On the *12* day of *Dec*_____ in the year *2014* before me, the undersigned, personally
appeared _____Raul Johnson_____, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed
the instrument.

_____
Signature of Individual Taking Acknowledgment

Melanie K. Shrell
_____
Printed Name

**NOTARY PUBLIC**
_____
Office of Individual Taking Acknowledgment

(Seal)          My Commission Expires:        **At Death**

MAUREEN O'CONNELL COUNTY CLERK
NASSAU COUNTY CLERK'S OFFICE
E-RECORDED

**EXHIBIT B**

# ORIGINAL

IAS Term Part FP of the Supreme Court of the State of New York, held in and for the County of Nassau, at the Courthouse thereof located at 100 Supreme Court Drive, Mineola, New York 11501, on the _____ day of _____, 20__.

**OCT 1 3 2016**

*Mot # 3*
*Amend Caption*

2016 DEC 09   PM 2: 23   RECEIVED BY SUPREME COURT NASSAU COUNTY

PRESENT:

HON. THOMAS A. ADAMS JSC

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-------------------------------------------------------------------x

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,

                                        Plaintiff,

        -against-

DEBORAH BACCHUS; JAMES BACCHUS; WASHINGTON MUTUAL BANK, FA; FLEET NATIONAL BANK,

                                        Defendant(s),

-------------------------------------------------------------------x

Index No.: 012082/07

D/O/F:

**JUDGMENT OF FORECLOSURE AND SALE**
Premises Address:
34 Maxson Avenue
Freeport, NY 11520

On the Summons, Complaint and Notice of Pendency of Action heretofore filed in *and the Notice of Pendency Renewing dated December 29, 2015* this action on July 11, 2007, and all proceedings thereon, and on reading and filing the

Affirmation of Regularity of Anthony L. Pitnell, Esq: signed on December 19, 2012, *and the Affirmation of Daniel D. Wade dated December 29, 2015* showing that each of the Defendants herein have been duly served with the Summons and

Complaint in this action, or have voluntarily appeared by their respective attorneys, and

stating that more than the legally required number of days had elapsed since said

Defendants were so served and/or appeared; and that none of the Defendants had served

any answer to said Complaint, nor had their time to do so been extended or, if they had

served an answer, it was dismissed by summary judgments or stipulation of the parties,

and upon the attached affidavit of mailing reflecting compliance with CPLR

3215(g)(3)(iii); and that the Complaint herein and Notice of Pendency of this action

containing all the particulars required to be stated therein was duly filed in the Office of

the Clerk of the County of Nassau on July 11, 2007, and an Order of Appointment

having been duly executed where a Referee was appointed to compute the amount due to

the Plaintiff upon the bond/note and mortgage set forth in the Complaint and said Referee

having examined and reported whether the mortgaged premises can be sold in parcels,

   **AND,** on the reading and filing the report of Graham Kistler, Esq. the Referee

named in said Order of Appointment, by which Report, bearing date the November 30,

2015, it appears that the sum of $391,304.05 was due thereon at the date computed to on

said Report and that the mortgaged premises cannot be sold in parcels.

   **NOW,** upon proof of due notice of this application upon all parties who had not

waived the same.

   **ORDERED,** that the motion is hereby granted without opposition; and it is

further

   **ORDERED,** that the said Report of the said Referee be, and the same is hereby in

all respects ratified and confirmed; and it is further

   **ORDERED, ADJUDGED AND DECREED,** that the Referee herein designated

to sell the premises under foreclosure be and hereby is directed to ascertain the sums due

and owing to defendant FLEET NATIONAL BANK as provided for in its mortgage and

mortgage note both dated September 14, 2004 and if there be any surplus monies arising

from the foreclosure sale, to pay the same over to said defendant FLEET NATIONAL

BANK or so much thereof as will pay the indebtedness due and owing to said defendant

FLEET NATIONAL BANK and in the event there be any deficiency thereafter said

defendant subordinate mortgage have judgment therefor upon making appropriate application therefor to this Court; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the caption be amended by substituting the name of "FEDERAL NATIONAL MORTGAGE ASSOCIATION" in the place and stead of "JPMORGAN CHASE, NATIONAL ASSOCIATION" as plaintiff; and all papers and proceedings shall be deemed amended accordingly, to read as follows:

--------------------------------------------------------------------x

FEDERAL        NATIONAL       MORTGAGE
ASSOCIATION                                                    Index No.:012082/07

                            Plaintiff,

            -against-

DEBORAH BACCHUS; JAMES BACCHUS;
WASHINGTON MUTUAL BANK, FA; FLEET
NATIONAL BANK,

                            Defendants.
--------------------------------------------------------------------x
            And it is further

**ORDERED**, that the mortgaged premises, as described in the Complaint in this action be sold at public auction at the **Calendar Control Part (CCP) Courtroom of the Supreme Court, 100 Supreme Court Drive, Mineola, NY 11501 \*\*on Tuesday at 11:30 am\*\*** by and under the direction of Graham Kistler, Esq. Fiduciary Number _152 671_ who is hereby appointed Referee for that purpose; that the said Referee give public notice of the time and place of such sale according to law and the practice of this      Court,      _in      an_      official      publication      to      wit: 

_____
FREEPORT LEADER
2 ENDO BLVD
GARDEN CITY NY
_____ or in any publication in compliance with RPAPL 231; and it is further

**ORDERED**, that the Referee at the time of sale may accept a written bid from the

Plaintiff or the Plaintiff's attorneys, just as though the Plaintiff were physically present to submit said bid; and it is further

**ORDERED,** that the premises be sold in "as is" condition defined as the condition the premises are in as of the date of sale and continuing through the date of closing, and that said sale shall be subject to;

(a)     Rights of the public and others in and to any part of the mortgaged premises that lies within the bounds of any street, alley, or highway; restrictions and easements of record;

(b)     Any state of facts that an accurate, currently dated survey might disclose;

(c)     Rights of tenants, occupants or squatters, if any. It shall be the responsibility of the Purchaser to evict or remove any parties in possession of premises being foreclosed. There shall be no pro-rata adjustment in favor of the purchaser for any rents that are paid for a period after the date of the foreclosure sale.

(d)     The right of redemption of the United States of America, if any; and it is further

**ORDERED,** that the Plaintiff or any other parties to this action may become the purchaser or purchasers at such sale; that in case the Plaintiff shall become the purchaser at the said sale, it shall not be required to make any deposit thereon; and it is further

**ORDERED,** that the Referee conducting the sale shall pay out of the proceeds of sale all taxes, assessments, sewer rents and water rates which are liens upon the property at time of sale. Purchaser shall be responsible for interest due on any real property tax

liens accruing after the first day of the month following the foreclosure sale; and it is further

ORDERED, that the Referee then take the remaining proceeds of sale and deposit them in his/her own name as Referee in his account or other separate account

CITIBANK
250 Old Country Rd
Mineola NY 11501

and in addition to executing a deed to the purchaser(s) of the premises sold, shall thereafter make the following payments and his/her checks drawn for that purpose;

~~FIRST: Pursuant to CPLR §8003(a), a fee of $500.00 shall be paid to the Referee for the computation stage and upon the filing of his/her report;~~

SECOND: The statutory fees of said Referee, Graham Kistler, Esq., for conducting the sale of $ 250 as and for his fee for conducting the sale, pursuant to CPLR §8003(b)

THIRD: The Referee shall pay the costs of advertising/posting as listed on bills presented to and certified by the Referee to be correct, duplicate copies of which shall be annexed to the report of sale when filed.

FOURTH: Said Referee shall also pay to the Plaintiff or its attorney the following; Costs and Disbursements. $ 2188.00 adjudged to the Plaintiff for costs and disbursements in this action, to be taxed by the clerk and inserted herein, with interest at the legal rate thereon from the date of entry hereof.

Additional Allowance. $ 300.00 is hereby awarded to the Plaintiff in addition to costs with interest at the legal rate thereon from the date of entry hereof.

Amount Due per Referee's Report. $391,304.05 said amount so reported due as aforesaid together with interest at the rate in the note and mortgage thereon from the

dated computed to in said Report until the date of entry of this judgment, with interest at the statutory rate thereon until the date of transfer of the Referee's Deed, or so much of the purchase money as will the same, and that he/she take a receipt for said payment and file it with his/her report of sale.

**Attorney Fees.** $1,800.00 is hereby awarded to the Plaintiff as reasonable legal fees herein, with legal interest from the date of entry of judgment.

Plaintiff may, after entry of this judgment, add to the amount due any and all advances made by Plaintiff for inspection fees, maintenance charges, taxes insurance premiums or other advances necessary to preserve the property, whether or not said advances were made prior to or after entry of judgment, so long as said charges were not included in the Referee's Report, and the Referee be provided with receipts for said expenditures, all together with interest thereon pursuant to the note and mortgage, from the date of the expense until the date of entry of this Judgment, then with interest at the legal rate until the date of transfer of the Referee's Deed.

**FIFTH:** That in case the Plaintiff be the purchaser of said mortgaged premises at said sale, said Referee shall not require the Plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff a Deed of the premises sold upon the payment to said Referee of the amounts specified above in items marked "FIRST", "SECOND" and "THIRD"; That the balance of the amount bid, after deducting the amounts paid by the Plaintiff, for Referee's fees, and advertising expenses, shall be allowed to the Plaintiff and applied by said Referee upon the amounts due to the Plaintiff as specified above in item marked "FOURTH" that if applying the balance of the amount bid, there shall be a surplus over and above said amounts due to the Plaintiff, the Plaintiff shall pay the same to said Referee, who shall deposit the funds in accordance with

paragraph "SIXTH" below.

**SIXTH:** The referee shall take receipts for the money so paid out by him and file the same with his report of sale, and that he deposit the surplus moneys, if any, with the Nassau County Treasurer within five (5) days after same shall be received and be ascertainable, to the credit of this action, to be withdrawn only upon the written order of this Court, signed by a Justice of this Court; that the Referee make his/her report of such sale under oath showing the disposition of the proceeds of the sale accompanied by the vouchers of the person to whom the payments were made and file it with the Clerk of the ~~the~~ Nassau County ~~Court~~ within thirty (30) days of completing the sale, and executing the proper conveyance to the purchaser.; and it is further

**ORDERED,** that the purchaser or purchasers at said sale be let into possession on production of the Referee's deed or deeds; and it is further

**ORDERED,** that each and all of the Defendants in this action and all persons claiming under them or any or either of them, after the filing of the Notice of Pendency of this action, be and they hereby are, barred and foreclosed of all right, claim, lien, title interest and equity of redemption in said mortgaged premises, and each and every part thereof; and it is further

**ORDERED,** that the liens of the Plaintiff other than the mortgage or mortgages that are the subject matter of this action also be foreclosed herein as though the Plaintiff was named as a party Defendant, specifically reserving to the Plaintiff its right to share in any surplus monies as a result of such position as a lien creditor; and it is further

**ORDERED,** that by accepting this appointment, the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR, Part 36),

including, but not limited to 36.2(c) ("Disqualification from appointment") and 36.2(d) ("Limitations on appointments based upon compensation") and if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the Appointing Judge forthwith; and it is further

ORDERED, that pursuant to CPLR 8003(b), absent application to the court, further court order, and compliance with Part 36 of the Rules of the Chief Judge, the Referee shall not demand, accept of receive more than the statutory $ 𝟸𝟻𝟶 otherwise payable to the Referee for the foreclosure sale stage, regardless of adjournment, delay or stay of the sale; and it is further

ORDERED, that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge.

ORDERED, that the Referee appointed to sell herein be served with a signed copy of this Judgment of Foreclosure and Sale with notice of entry; and it is further ORDERED, that the Referee must submit the Notice of Sale to the Motion Support Office, in the Supreme Court, Room 152 at least ten (10) days prior to the date of auction; and it is further

ORDERED, that no sale of the premises will be scheduled, and the Court will not place the above captioned matter on the calendar for auction, nor will the Court accept a Notice of Sale, unless and until an "Affidavit in Support of Residential Mortgage Foreclosure" is submitted by the Plaintiff stating that all Federal, State and Local Statutes, Laws, Rules and Regulations, Mandates and Executive Orders with respect to Mortgage Foreclosure, Foreclosure Prevention and Home Retention, as well as all

conditions precedent to the commencement of an action to foreclose a residential mortgage, have been complied with in the instant action.

That a description of the said mortgage premises hereinbefore mentioned, is annexed to this Judgment and made a part thereof as Schedule A – Legal Description.

**E N T E R,**

Hon. Thomas A. Adams
Justice of the Supreme Court

**ENTERED**

NOV 09 2016

NASSAU COUNTY
COUNTY CLERK'S OFFICE

Policy No.: M 8832 - 497273

# SCHEDULE A
## LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Freeport, Town of Hempstead, County of Nassau and State of New York, known as and by the westerly 75 feet of Lots 109 to 112 both inclusive on a certain map entitled, "Map No. 1 of Residence Park, at Freeport, L.I. owned and controlled by the Warranty Realty Company", and filed in the Office of the Clerk of the County of Nassau on 06/09/1903 as Map No. 234. Case #1813, and which said parts of Lots when taken together are bounded and described as follows:

BEGINNING at a point on the northerly side of Maxson Avenue (Central Avenue) distant 75 feet westerly from the corner formed by the intersection of the northerly side of Maxson Avenue (Central Avenue) with the westerly side of Connecticut Avenue;

RUNNING THENCE South 89 degrees 45 minutes West, along the northerly side of Maxson Avenue (Central Avenue), 75 feet;

THENCE North 00 degrees 15 minutes West, 100 feet;

THENCE North 89 degrees 45 minutes East, 75 feet;

THENCE South 00 degrees 15 minutes East, 100 feet to the northerly side of Maxson Avenue (Central Avenue), the point or place of BEGINNING.

SAID PREMISES also being known as                 34 Maxson Avenue
                                                    Freeport, New York

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------------x
JPMORGAN   CHASE   BANK,   NATIONAL
ASSOCIATION,

                   Plaintiff,     Index No.: 012082/07

    -against-

                                          **COSTS OF PLAINTIFF**

DEBORAH   BACCHUS;   JAMES   BACCHUS;
WASHINGTON   MUTUAL   BANK,   FA;   FLEET
NATIONAL BANK, et al.,

                   Defendants.
--------------------------------------------------------------------x
Costs before Notes of Issue filed,
CPLR §8201(1)...............................................$200.00

Additional Allowance by Statute - CPLR §8302(a)(b):

addl.(not exceeding $200)  $200 at 10%...$20.00
addl.(not exceeding $800)  $800 at  5%...$40.00
  "  (not exceeding $2000) $2000 at 2%...$40.00
  "  (not exceeding $5000) $5000 at 1%...$50.00..........$150.00

Additional Allowance by Statute - CPLR §8302(d)......$50.00

*COSTS THIS 9TH DAY OF NOV. 20— ADJUSTED AT $218.00 Maureen O'Connell CLERK, NASSAU CO.*

### FEES AND DISBURSEMENTS

Fee for Index Number and Filing Lis Pendens
CPLR 8018(a), 8021(a)(12).........................................$264.00
Paid for searches......................................................$795.00  *500.00*
Serving copy of summons and complaint
CPLR 80ll(c), 830l(d).................................................$430.00  *140.00*
Request for Judicial Intervention...................................$95.00
Referee's fee (CPLR 8301(a)(1), 8003(a))....................$500.00
Certified copy of judgment..........................................$4.00
Motion fees................................................................$90.00
Notice of Pendency of refiling ........................... $195.00
                                     ----------------
                                     $2,773.00  *$2188.00*

Taxed at $ _____ this _____ day of _____, 20__.


                             _____
                                   Clerk

STATE OF NEW YORK          )
                          ) ss:
COUNTY OF DUTCHESS         )

The undersigned, an attorney admitted to practice in the Courts of this State, affirms that (s)he is an associate of the law firm of **ROSICKI, ROSICKI & ASSOCIATES, P.C.** the attorneys of record for the plaintiff in the above-entitled action; that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in amount and that copies of documents or papers as charged herein were actually and necessarily obtained for use.

The undersigned affirms that the foregoing statements are true under the penalties of perjury.

Dated: December 21, 2015
       Fishkill, New York


                                        Daniel B. Wade, Esq.

34 Maxson Avenue, Freeport, NY 11520

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
IN RE:                                                    Chapter 7
Deborah Ann Bacchus, dba My Dream Home Realty            Case# 17-71193-las
Inc.
                                          Debtor(s)
-------------------------------------------------------------x

---

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

---

## BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: <u>34 Maxson Ave., Freeport, NY 11520,</u>

2. LENDER NAME: Federal National Mortgage Association ("Fannie Mae")

3. MORTGAGE DATE: 03/14/2001

4. POST-PETITION PAYMENT ADDRESS:
Seterus, Inc.
P.O. Box 1047
Hartford, CT  06143

## DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $466,522.83 as of November 27, 2017
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $250,000.00

7. SOURCE OF ESTIMATED MARKET VALUE:  SCHEDULE A/B

## STATUS OF THE DEBT AS OF NOVEMBER 27, 2017

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF NOVEMBER 1, 2017:

|   |   |
|---|---|
| A. TOTAL: | $466,522.83 |
| B. PRINCIPAL: | $162,157.85 |
| C. INTEREST: | $119,709.97 |

D. ESCROW (TAXES AND INSURANCE):                          $174,358.68

E. FORCED PLACED INSURANCE EXPENDED BY MOVANT:            $0.00

F. ATTORNEYS' FEES CHARGED TO DEBTOR(S):                  $3,940.00

G. LATE FEES CHARGED TO DEBTOR(S):                        $0.00

9. CONTRACTUAL INTEREST RATE:  6.87500%
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT
ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM.. STATE THE EXHIBIT
NUMBER HERE:____.)*

10. OTHER FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED
ABOVE: Property inspections: $1,216.55; Filing costs: $2,387.30; Service costs: $3.68; Title
costs: $1,315.00; Sales costs: $1,433.80

*(IF ADDIITONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE
SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:____.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT:  No post-petition payments

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: _8__ PAYMENTS.
**Loan is contractually due for April 1, 2007

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 4/1/2017 | $3,259.55 | | | | | |
| 5/1/2017 | $3,259.55 | | | | | |
| 6/1/2017 | $3,259.55 | | | | | |
| 7/1/2017 | $3,259.55 | | | | | |
| 8/1/2017 | $3,259.55 | | | | | |
| 9/1/2017 | $3,259.55 | | | | | |
| 10/1/2017 | $3,259.55 | | | | | |
| 11/1/2017 | $3,259.55 | | | | | |
| TOTALS | $26,076.40 | $ | $ | $ | $ | $ |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

      A. TOTAL:                                       $931.00

      B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:   $750.00

      C. FILING FEE IN CONNECTION WITH THIS MOTION:     $181.00

      D. OTHER POST-PETITION ATTORNEYS' FEES:         $0.00

      E. POST-PETITION INSPECTION FEES:             $0.00

      F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:   $0.00

      G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:    $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:          $0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:
*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

# REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT ___A___.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT ___A___.)

(3)    COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT ___A___.)

## DECLARATION AS TO BUSINESS RECORDS

I, **Catherine Rogers**, THE Document Management Specialist OF Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America, THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT **Beaverton**, **Oregon** ON THIS 13 DAY OF December 20 17.

**Catherine Rogers** (NAME)
Document Management Specialist (TITLE)
Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America
14523 SW Millikan Way, Suite #200
Beaverton, OR  97005

## DECLARATION

I, **Catherine Rogers**, THE Document Management Specialist OF Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America, THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT **Beaverton**, **Oregon** ON THIS 13 DAY OF December 20 17.

**Catherine Rogers** (NAME)
Document Management Specialist (TITLE)
Seterus, Inc., as authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America
14523 SW Millikan Way, Suite #200
Beaverton, OR  97005

**EXHIBIT D**

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | Deborah | Ann | Bacchus |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Eastern District of New York

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.**
34 Maxson Ave.,
Street address, if available, or other description

Freeport          NY    11520
City              State  ZIP Code

Nassau
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? $250,000.00
Current value of the portion you own? $250,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
fee simple

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

**1.2.**
_____
Street address, if available, or other description

_____

City              State  ZIP Code

County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property? $_____
Current value of the portion you own? $_____

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

Debtor 1 **Deborah   Ann   Bacchus**
First Name   Middle Name   Last Name

Case number (if known)_____

| | What is the property? Check all that apply. | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|
| 1.3._____ <br> Street address, if available, or other description <br><br> _____ <br><br> _____ <br> City            State      ZIP Code <br><br> _____ <br> County | ☐ Single-family home <br> ☐ Duplex or multi-unit building <br> ☐ Condominium or cooperative <br> ☐ Manufactured or mobile home <br> ☐ Land <br> ☐ Investment property <br> ☐ Timeshare <br> ☐ Other _____ <br><br> Who has an interest in the property? Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> Other information you wish to add about this item, such as local property identification number: _____ | Current value of the entire property?   Current value of the portion you own? <br> $_____   $_____ <br><br> Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. <br><br> ☐ Check if this is community property (see instructions) |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. ........................................➜  $_____

## Part 2: Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
☑ Yes

| 3.1. Make:   Honda <br> Model:   Ridgeline <br> Year:   2006 <br> Approximate mileage:   140000 <br> Other information: <br> _____ | Who has an interest in the property? Check one. <br> ☑ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> Current value of the entire property?   Current value of the portion you own? <br> $_____4,000.00   $_____4,000.00 |
|---|---|---|

If you own or have more than one, describe here:

| 3.2. Make:   _____ <br> Model:   _____ <br> Year:   _____ <br> Approximate mileage:   _____ <br> Other information: <br> _____ | Who has an interest in the property? Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> Current value of the entire property?   Current value of the portion you own? <br> $_____   $_____ |
|---|---|---|

Debtor 1    **Deborah    Ann    Bacchus**
            First Name    Middle Name    Last Name

Case number *(if known)* _____

| | | |
|---|---|---|
| 3.3.  Make: _____ <br> Model: _____ <br> Year: _____ <br> Approximate mileage: _____ <br> Other information: <br> [                    ] | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> **Current value of the entire property?** **Current value of the portion you own?** <br><br> $_____  $_____ |
| 3.4.  Make: _____ <br> Model: _____ <br> Year: _____ <br> Approximate mileage: _____ <br> Other information: <br> [                    ] | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> **Current value of the entire property?** **Current value of the portion you own?** <br><br> $_____  $_____ |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories
   ☑ No
   ☐ Yes

| | | |
|---|---|---|
| 4.1.  Make: _____ <br> Model: _____ <br> Year: _____ <br> Other information: <br> [                    ] | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> **Current value of the entire property?** **Current value of the portion you own?** <br><br> $_____  $_____ |

If you own or have more than one, list here:

| | | |
|---|---|---|
| 4.2.  Make: _____ <br> Model: _____ <br> Year: _____ <br> Other information: <br> [                    ] | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> **Current value of the entire property?** **Current value of the portion you own?** <br><br> $_____  $_____ |

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here .................................................➔    $    **4,000.00**

Debtor 1    __Deborah    Ann    Bacchus__    Case number *(if known)*_____
              First Name    Middle Name    Last Name

## Part 3:  Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☑ Yes. Describe......... | 3 bedroom sets, LR set, | $ 4,500.00

7. *Electronics*
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☑ Yes. Describe......... | desktop, laptop, cell phone, 2 TVs | $ 1,500.00

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes. Describe......... | | $

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☑ No
   ☐ Yes. Describe......... | | $

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☑ No
    ☐ Yes. Describe......... | | $

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☑ Yes. Describe......... | regular clothes | $ 1,000.00

12. **Jewelry**
    Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ☑ Yes. Describe......... | 2 rings | $ 200.00

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☑ No
    ☐ Yes. Describe......... | | $

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☑ No
    ☐ Yes. Give specific information. ......... | | $

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............ → | $

| Debtor 1 | Deborah   Ann   Bacchus | | Case number (if known) | |
|---|---|---|---|---|
| | First Name   Middle Name   Last Name | | | |

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

16. **Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes ....................................................................................................    Cash: ........................  $            50.00

17. **Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☐ Yes ..................... Institution name:

| | | |
|---|---|---|
| 17.1. Checking account: | _____ | $_____ |
| 17.2. Checking account: | _____ | $_____ |
| 17.3. Savings account: | _____ | $_____ |
| 17.4. Savings account: | _____ | $_____ |
| 17.5. Certificates of deposit: | _____ | $_____ |
| 17.6. Other financial account: | _____ | $_____ |
| 17.7. Other financial account: | _____ | $_____ |
| 17.8. Other financial account: | _____ | $_____ |
| 17.9. Other financial account: | _____ | $_____ |

18. **Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes ................. Institution or issuer name:

| | |
|---|---|
| _____ | $_____ |
| _____ | $_____ |
| _____ | $_____ |

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
☐ Yes. Give specific information about them ............ 

Name of entity:                    % of ownership:

| | | |
|---|---|---|
| _____ | 0% ____% | $_____ |
| _____ | 0% ____% | $_____ |
| _____ | 0% ____% | $_____ |

Debtor 1    Deborah    Ann    Bacchus                                    Case number *(if known)*_____
        *First Name*    *Middle Name*    *Last Name*

---

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No

☐ Yes. Give specific    Issuer name:
    information about
    them..................    _____    $_____

                _____    $_____

                _____    $_____

21. **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No

☑ Yes. List each
    account separately.    Type of account:    Institution name:

                  401(k) or similar plan:    _____    $_____

                  Pension plan:    _____    $_____

                  IRA:    meryl lynch, other    $       22,000.00

                  Retirement account:    _____    $_____

                  Keogh:    _____    $_____

                  Additional account:    _____    $_____

                  Additional account:    _____    $_____

22. **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☑ No

☐ Yes ..............    Institution name or individual:

                  Electric:    _____    $_____

                  Gas:    _____    $_____

                  Heating oil:    _____    $_____

                  Security deposit on rental unit:    _____    $_____

                  *Prepaid rent:*    _____    $_____

                  Telephone:    _____    $_____

                  Water:    _____    $_____

                  Rented furniture:    _____    $_____

                  Other:    _____    $_____

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

☐ Yes ..............    Issuer name and description:

                _____    $_____

                _____    $_____

                _____    $_____

Debtor 1   Deborah   Ann   Bacchus                          Case number *(if known)*_____
       *First Name*   *Middle Name*   *Last Name*

24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
☑ No
☐ Yes ............................ Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

                                                                 $_____
                                                                 $_____
                                                                 $_____

25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit
☑ No
☐ Yes. Give specific information about them....                                             $_____

26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
☑ No
☐ Yes. Give specific information about them....                                             $_____

27. Licenses, franchises, and other general intangibles
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
☑ No
☐ Yes. Give specific information about them....                                             $_____

**Money or property owed to you?**
                                       **Current value of the portion you own?** Do not deduct secured claims or exemptions.

28. Tax refunds owed to you
☑ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years. ........
                                        Federal:  $_____
                                        State:   $_____
                                        Local:   $_____

29. Family support
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
☑ No
☐ Yes. Give specific information .............
                                        Alimony:   $_____
                                        Maintenance:  $_____
                                          Support:   $_____
                                          Divorce settlement:  $_____
                                        Property settlement:  $_____

30. Other amounts someone owes you
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
☑ No
☐ Yes. Give specific information .............                                           $_____

| Debtor 1 | Deborah   Ann   Bacchus | | Case number (if known) | |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

**31. Interests in insurance policies**

*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company
of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| | | $_____ |
| | | $_____ |
| | | $_____ |

**32. Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

☐ Yes. Give specific information............    $_____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Describe each claim. ...................    $_____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

☐ Yes. Describe each claim. ...................    $_____

**35. Any financial assets you did not already list**

☐ No

☐ Yes. Give specific information............    $_____

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ...................................................................................→    $_____

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**

☐ No. Go to Part 6.

☑ Yes. Go to line 38.

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☐ No

☑ Yes. Describe......    $_____

**39. Office equipment, furnishings, and supplies**

*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☐ No

☑ Yes. Describe......    home office equiptment    $    1,000.00

---

Official Form 106A/B                Schedule A/B: Property                page 8

Debtor 1    Deborah    Ann    Bacchus                      Case number *(if known)*_____
        First Name     Middle Name     Last Name

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
- ☑ No
- ☐ Yes. Describe .....                                           $_____

41. **Inventory**
- ☑ No
- ☐ Yes. Describe .....                                           $_____

42. **Interests in partnerships or joint ventures**
- ☑ No
- ☐ Yes. Describe ......   Name of entity:                        % of ownership:

                                              ____ %    $_____
                                              ____ %    $_____
                                              ____ %    $_____

43. **Customer lists, mailing lists, or other compilations**
- ☑ No
- ☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?
  - ☐ No
  - ☐ Yes. Describe .......                                   $_____

44. **Any business-related property you did not already list**
- ☑ No
- ☐ Yes. Give specific information ..........                                 $_____
                                                $_____
                                                $_____
                                                $_____
                                                $_____
                                                $_____

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here** ................................................... →   $_____

---

**Part 6:**    **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
*If you own or have an interest in farmland, list it in Part 1.*

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
- ☑ No. Go to Part 7.
- ☐ Yes. Go to line 47.

                                                     **Current value of the portion you own?**
                                                     Do not deduct secured claims or exemptions.

47. **Farm animals**
*Examples*: Livestock, poultry, farm-raised fish
- ☑ No
- ☐ Yes .................                                             $_____

Debtor 1   Deborah   Ann   Bacchus                         Case number (if known)_____
          First Name    Middle Name    Last Name

48. Crops—either growing or harvested
   ☑ No
   ☐ Yes. Give specific
       information. ..........                                                        $_____

49. Farm and fishing equipment, implements, machinery, fixtures, and tools of trade
   ☑ No
   ☐ Yes ..................                                                           $_____

50. Farm and fishing supplies, chemicals, and feed
   ☑ No
   ☐ Yes ..................                                                           $_____

51. Any farm- and commercial fishing-related property you did not already list
   ☑ No
   ☐ Yes. Give specific
       information. ..........                                                        $_____

52. Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached
    for Part 6. Write that number here ............................................... →   $_____

## Part 7:   Describe All Property You Own or Have an Interest in That You Did Not List Above

53. Do you have other property of any kind you did not already list?
    Examples: Season tickets, country club membership
   ☐ No
   ☐ Yes. Give specific                                                              $_____
       information. ..........                                                        $_____
                                                                                     $_____

54. Add the dollar value of all of your entries from Part 7. Write that number here ......... →   $_____

## Part 8:   List the Totals of Each Part of this Form

55. Part 1: Total real estate, line 2 ................................................... →   $_____

56. Part 2: Total vehicles, line 5                              $_____

57. Part 3: Total personal and household items, line 15         $_____

58. Part 4: Total financial assets, line 36                     $_____

59. Part 5: Total business-related property, line 45            $_____

60. Part 6: Total farm- and fishing-related property, line 52   $_____

61. Part 7: Total other property not listed, line 54          + $_____

62. Total personal property. Add lines 56 through 61. ................   $_____   Copy personal property total → + $_____

63. Total of all property on Schedule A/B. Add line 55 + line 62 ..................   $_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

IN RE:                                          CASE NO.: 17-71193-las

Deborah Ann Bacchus                             Chapter: 7
*dba* My Dream Home Realty Inc.,

                          DEBTOR.        **AFFIDAVIT OF SERVICE**

-------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NASSAU     )

        Arzoo Mamoor, being duly sworn, deposes and says:
        I am not a party to this action, am over 18 years of age and reside in Suffolk County, New
York. On December 14, 2017, I served the within Notice of Motion, Motion for
Modification of the Automatic Stay on the following parties, by depositing a true copy thereof in
a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S.
Postal Service within New York State, addressed to each of the following persons at the last
known address set forth after each name:

Deborah Ann Bacchus, dba My Dream Home Realty Inc.
34 Maxson Ave
Freeport, NY 11520

Marc A. Pergament, Esq.
Weinberg Gross & Pergament
400 Garden City Plaza
Suite 403
Garden City, NY 11530

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

                                        _____
                                        Arzoo Mamoor

Sworn to before me this
14 day of _December_, 2017

_____
NOTARY PUBLIC

Betsy P. Tarr
Notary Public, State of New York
No. 01TA6000083
Qualified in Nassau County
Term Expires December 8, 2017

## NOTICE OF MOTION COVER SHEET

NAME OF DEBTOR                                    CASE NUMBER
Deborah Ann Bacchus *dba* My Dream               17-71193-las
Home Realty Inc.


PLAINTIFF/MOVANT                                 DEFENDANT/RESPONDENT
  Federal National Mortgage Association
("Fannie Mae")

ATTORNEYS                                        ATTORNEYS IF KNOWN
Rosicki, Rosicki & Associates, P.C.              Deborah Ann Bacchus, dba My Dream
51 East Bethpage Road                            Home Realty Inc.
Plainview, NY 11803                              34 Maxson Ave
                                                 Freeport, NY 11520

PRINT NAME OF ATTORNEY                           SIGNATURE
Stephani A. Schendlinger, Esq.

### NATURE OF SUIT
(Check all Boxes That Apply to This Motion)

_____X_____   To Grant Relief from the Automatic Stay
              11 U.S.C. Section of 362(d) ($181.00 fee required)

_____   To Withdraw the Reference of a Case
              11 U.S.C. Section 157(d)    ($75.00 fee required)

_____   To Compel Abandonment of Property
              of the Estate - B.R. 6007 (b) ($75.00 fee required)

_____   To Convert (fee not required)

_____   To Dismiss (fee not required)

_____   To Assume/Reject (fee not required)

_____   To Extend Time to Object to Discharge/Dischargeability

_____   To Extend Exclusivity Period to File Plan, Etc.

_____   Objections to Claims

_____   For Summary Judgment

_____   Other- Specify Type of Motion _____

FILING FEE (Check One) _____ Fee Attached ___X___ Fee Paid Online

# *ROSICKI, ROSICKI & ASSOCIATES, P.C.*

### *ATTORNEYS AT LAW*

## *Main Office: 51 East Bethpage Road*

## *Plainview, New York 11803*

### *Telephone (516) 741-2585*

### *Facsimile (516) 873-7243*

*We are a debt collector and are attempting to collect a debt.*

*Any information obtained may be used for that purpose.*

December 14, 2017

United States Bankruptcy Court
Eastern District of New York
Long Island Federal Courthouse
290 Federal Plaza, PO Box 9013
Central Islip, NY 11722

        **Re:**    **Debtor:  Deborah Ann Bacchus *dba* My Dream Home Realty Inc.**
                **Bankruptcy Case No.: 17-71193-las**
                **Chapter 7**

Dear Sir or Madam:

Enclosed herewith please find one Chambers Copy of a Notice of Motion and Motion for Modification of the Automatic Stay. The appropriate filing fee in the amount of $181.00 has been paid online.

Please file this motion with the Court as it is scheduled for hearing on January 23, 2018 at 10:00 AM.

Your assistance is greatly appreciated.

Very truly yours,

ROSICKI, ROSICKI & ASSOCIATES, P.C.

Betsy Tarr
Paralegal

Enclosures